## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

FILED ___ ___ ENTERED
LOGGED ___ ___ RECEIVED

**MAY 1 2 2021**

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

| | |
|---|---|
| **MINE DILSIZ** <br> 261 Congressional Lane – Apt 411 <br> Rockville, MD 20852 <br>     **Plaintiff** <br><br> v. <br><br> **GINOU, INC.,** <br> 186 Halpine Road <br> Rockville, MD 20852 <br> d/b/a Mosaic Cuisine <br><br>     Serve Resident Agent: <br>     Alan Rothenberg <br>     Suite 500 <br>     401 N. Washington Street <br>     Rockville Md 20850 <br><br> **THIERRY JUGNET** <br> 186 Halpine Road <br> Rockville, MD 20852 <br>     **Defendants** | Civil Action No.: **GJH 2 1 CV 1 1 5 7** <br><br><br> **REQUEST FOR JURY TRIAL** |

**************************************************************************

## COMPLAINT FOR WAGES OWED

Plaintiff Mine Dilsiz files this Complaint against her former employers, the two named Defendants, because they: (1) failed to pay her the wages she is owed under federal, state, and local laws; (2) did not allow her to use earned and accrued sick leave pay when she was sick and not able to work.

### STATEMENT OF CASE

1. Defendants' failed to properly compensate Plaintiff Mine Dilsiz ("Ms. Dilsiz") (or "Ms. Dilsiz") with respect to overtime and minimum wages owed, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA'), the Maryland Wage and Hour Law, Md. Code, Labor & Emp. Code § 3-401 *et seq.* ("MWHL"), the Maryland Wage Payment and Collection

Law, Md. Cod Labor & Empl. § 3-501 *et seq.* ("MWPCL"), and the Montgomery County Minimum Wage Law, Montgomery County Code 27-68.

2.   Defendants did not pay accrued and earned sick leave to Ms. Dilsiz when she was ill and not able to work, as required under Montgomery County's Earned Sick and Safe Leave Law ("Sick Leave Law"), Article VIII, Section 27-76.

3.   Ms. Dilsiz is a resident of the State of Maryland and worked for Defendants in Montgomery County.

4.   Ms. Dilsiz worked for the two Defendants for more than 10 years, from 2009 to February 2021.

5.   Defendant Ginou, Inc. runs and operates the Defendants' restaurant Mosaic Cuisine in Montgomery County.

6.   Defendant Thierry Jugnet is the owner of Defendant Ginou, Inc. and manages and controls all aspects of its business.

7.   Ms. Dilsiz was Defendants' "employee" as that term is defined and/or interpreted by or under the FLSA, 29 U.S. C. § 203(e), the Montgomery County Code § 27-67, and the MWPCL and the MWHL.

8.   Defendants were Ms. Dilsiz's "employer" as that term is defined and/or interpreted by the FLSA, 29 U.S.C. § 203(d), Montgomery County Code§ 27-67, MWHL Md. Code, Labor & Emp. Code § 3-401(b), MWPCL, Md. Code, Labor & Emp. Code 3-501(b).

9.   Ms. Dilsiz was an "employee" of Defendants as that term is defined and interpreted under the Sick Leave Law.

10. Defendants were the "employer" of Ms. Dilsiz as that term is defined and interpreted under the Sick Leave Law.

11. Defendants were the joint, single and/or integrated employer of Ms. Dilsiz.

12. Defendants engage in interstate commerce.

### STATEMENT OF FACTS

13. Under all governing wage-hour laws, and commencing on January 1, 2020, an employee must be paid not less than $684 per week to be exempt from overtime wages, when working more than 40 hours in any workweek. 29 C.F.R. § 600.

14. Montgomery County has a minimum wage law requirement of $13 per hour, effective as of July 1. 2019. Montgomery County Code 27-68.

15. From about May 2020 until she resigned from employment in February 2021, Ms. Dilsiz worked as an exempt employee because she was not generally paid at least $684 a week.

16. From about May 2020 until she resigned from employment in February 2021, Defendants failed to pay the required minimum wage for all her hours worked.

17. Defendants failed to maintain accurate records of the hours worked by Ms. Dilzsiz.

18. Defendants failed to maintain accurate payroll records when they paid Ms. Dilsiz.

19. Plaintiff spent substantially more than 50% of her time doing basic labor, such as taking orders, waiting on customers, cleaning the front of the restaurant and restroom facilities, packaging food, taking food to cars for curbside service, cleaning outdoor seating, setting up tables. and providing water and drink service. Ms. Dilsiz took out garbage from time to time.

20. Plaintiff regularly worked for Defendants in excess of 60-70 hours a week during all workweeks relevant to this lawsuit.

21. At all times relevant, Plaintiff opened and closed the restaurant for Defendants.

22. At all times relevant, Plaintiff did not take meal breaks or rest periods at work for Defendants.

23. Defendants were fully aware of the hours worked by Plaintiff.

24. Defendants were aware that Plaintiff did not take meal breaks or rest periods while at work for Defendants.

25. Defendant Jugnet had the power and exercised the power to hire and fire employees.

26. Defendant Jugnet set the terms and conditions of Ms. Dilsiz's employment with Defendants.

27. At all times relevant, Defendant Jugnet had and exercised both actual and apparent authority to hire and fire Ms. Dilsiz, direct and supervise Dilsiz's work, and bind and set wage and hour policies applicable to and for Ms. Dilsiz.

28. At all times relevant, Defendant Jugnet paid Plaintiff and other employees.

29. At all relevant times, Defendant Jugnet was the only person to sign paychecks and was authorized to pay employees.

30. Defendants did not allow Ms. Dilsiz to retain any tips.

31. Defendants did not require or ever ask Ms. Dilsiz to record or otherwise keep track of the hours she worked for them.

32. Defendants used a point-of-sale ("POS") software system called "Touch Bistro".

33. The POS system recorded when the Defendants opened and closed each work day, which was done by Ms. Dilsiz.

34. The POS system recorded the hours the restaurant was open in 14-day periods (two work weeks).

35. At all times relevant, Ms. Dilsiz was the only person who started and closed the POS system each work day.

36. The POS system, therefore, recorded the hours worked by Ms. Dilsiz according in two

workweek periods.

37. Defendants used no other method or system which recorded the hours worked by Ms. Dilsiz.

38. The following information is derived from Defendants' own records maintained in the POS system for the start and close time for the two-work week periods, and shows the hours worked, rounded to the nearest hour:

| Workweeks Periods | Hours:Minutes Worked | Rounded To Nearest ¼ hr | Hours Worked In Single Week |
|---|---|---|---|
| 05/25/2020-06/07/2020 | 136:52 | 136.00 | 68.00 |
| 06/08/2020-06/21/2020 | 147:46 | 147.75 | 73.88 |
| 06/22/2020-07/05/2020 | 130:00. | 130.00 | 65.00 |
| 07/06/2020-07/19/2020 | 130:00 | 130.00 | 65.00 |
| 07/20/2020-08/02/2020 | 130:00 | 130.00 | 65.00 |
| 08/03/2020-08/16/2020 | 117:57 | 118.00 | 59.00 |
| 08/17/2020–08/30/2020 | 120:36 | 120.50 | 60.25 |
| 08/31/2020–09/13/2020 | Sick | | |
| 09/14/2020-09/27/2020 | Sick | | |
| 09/28/2020-10/11/2020 | 114:54 | 115.00 | 57.50 |
| 10/12/2020-10/25/2020 | 126:44 | 126.75 | 63.38 |
| 10/26/2020-11/8/2020 | 142:44 | 142.75 | 71.38 |
| 11/09/2020-11/22/2020 | 127:59 | 128.00 | 64.00 |
| 11/23/2020-12/06/2020 | 130:00 | 130.00 | 65.00 |

39. The two workweek periods noted "with sick" are for the time when Plaintiff was ill and unable to work.

40. Defendants did not pay Ms. Dilsiz the accrued sick leave she was entitled to under the Sick Leave Law.

41. Ms. Dilsiz suffered from high blood pressure, nausea, vomiting, fatigue, and dizziness. She was diagnosed with Type-2 Diabetes.

42. Ms. Dilsiz offered to provide Defendants with a doctor's note for the period when she could not work because of illness.

43. Defendants told Ms. Dilsiz that she did not have to present a doctor's note to them.

44. The workweeks noted with "130" hours are actually less than the hours the POS system has recorded for those work periods.

45. Because Defendants did not maintain accurate records of the hours worked, the hours worked in a single workweek derive from dividing the combined two workweek periods into two separate equal workweek periods.

46. During the overwhelming majority of the workweeks, Defendants failed to pay Ms. Dilsiz the required minimum wage.

47. The following chart shows the hours worked per week (as discussed above), the pay that Ms. Dilsiz should have received if she had been paid the required Montgomery County minimum wage, the amount Defendants actually paid her, and the amount that she is owed for the minimum wage violations without interest or penalty damages:

| Workweek | Hours Worked | Pay Per 13.00 Hr Minimum Wage | Amount Paid | Owing Wages |
|---|---|---|---|---|
| 05/25/2020-05/31/2020 | 68.00 | 884.00 | 485.88 | 398.12 |
| 06/01/2020-06/07/2020 | 68.00 | 884.00 | 485.88 | 398.12 |
| 06/08/2020-06/14/2020 | 73.88 | 960.44 | 485.89 | 474.55 |
| 06/15/2020-06/21/2020 | 73.88 | 960.44 | 485.89 | 474.55 |
| 06/22/2020-06/28/2020 | 65.00 | 845.00 | 1066.92 | |
| 06/29/2020-07/05/2020 | 65.00 | 845.00 | 1066.92 | |
| 07/06/2020-07/12/2020 | 65.00 | 845.00 | 550.00 | 295.00 |
| 07/13/2020-07/19/2020 | 65.00 | 845.00 | 550.00 | 295.00 |
| 07/20/2020-07/26/2020 | 65.00 | 845.00 | 550.00 | 295.00 |
| 07/27/2020-08/02/2020 | 65.00 | 845.00 | 550.00 | 295.00 |
| 08/03/2020-08/09/2020 | 59.00 | 767.00 | 825.00 | |
| 08/10/2020-08/16/2020 | 59.00 | 767.00 | 825.00 | |
| 08/17/2020-08/23/2020 | 60.25 | 783.25 | 550.00 | 233.25 |
| 08/24/2020-08/30/2020 | 60.25 | 783.25 | 550.00 | 233.25 |
| 08/31/2020-09/06/2020 | Sick e | | | |
| 09/07/2020-09/13/2020 | Sick | | | |
| 09/14/2020-09/20/2020 | Sick | | | |
| 09/21/2020-09/27/2020 | Sick | | | |
| 09/28/2020-10/04/2020 | 57.50 | 747.50 | 550.00 | 197.50 |
| 10/05/2020-10/11/2020 | 57.50 | 747.50 | 550.00 | 197.50 |
| 10/12/2020-10/18/2020 | 63.38 | 830.44 | 550.00 | 280.44 |
| 10/19/2020-10/25/2020 | 63.38 | 830.44 | 550.00 | 280.44 |
| 10/26/2020-11/1/2020 | 71.38 | 927.94 | 550.00 | 377.94 |
| 11/2/2020-11/8/2020 | 71.38 | 927.94 | 550.00 | 377.94 |

| | | | |
|---|---|---|---|
| 11/9/2020-11/15/2020 | 64.00 | 832.00 | 550.00 | 282.00 |
| 11/16/2020-11/22/2020 | 64.00 | 832.00 | 550.00 | 282.00 |
| 11/23/2020-11/29/2020 | 65.00 | 845.00 | 550.00 | 295.00 |
| 11/30/2020-12/06/2020 | 65.00 | 845.00 | 550.00 | 295.00 |
| 12/07/2020-12/13/2020 | 73.50 | 955.50 | 550.00 | 405.50 |
| 12/14/2020-12/20/2020 | 73.50 | 955.50 | 550.00 | 405.50 |
| 12/21/2020-12/27/2020 | 72.13 | 937.69 | 550.00 | 387.69 |
| 12/28/2020-01/03/2021 | 72.13 | 937.69 | 550.00 | 387.69 |
| 01/04/2021-01/10/2021 | 69.13 | 898.69 | 550.00 | 348.69 |
| 01/11/2021-01/17/2021 | 69.13 | 898.69 | 550.00 | 348.69 |
| 01/18/2021-01/24/2021 | 58.75 | 763.75 | 550.00 | 213.75 |
| 01/25/2021-01/31/2021 | 58.75 | 763.75 | 550.00 | 213.75 |
| 02/01/2021-02/07/2021 | 61.00 | 793.00 | 550.00 | 243.00 |
| 02/08/2021-02/14/2021 | 61.00 | 793.00 | 550.00 | 243.00 |
| **TOTAL** | **2223.80** | **28,922.40** | **20,027.38** | **$9,454.86** |

48. Defendants also failed to pay Ms. Dilsiz overtime wages when she worked more than forty hours in a workweek.

49. The following charts shows the hours worked in excess of 40 hours in a workweek and the half-time (.5) overtime rate ($6.50) that she is owed for each overtime hour worked, and the overtime wages owed, without interest or penalty damages:

| Workweek | OT hours worked | Overtime Wages Owed |
|---|---|---|
| 05/25/2020-05/31/2020 | 28.00 | 182.00 |
| 06/01/2020-06/07/2020 | 28.00 | 182.00 |
| 06/08/2020-06/14/2020 | 33.88 | 220.22 |
| 06/15/2020-06/21/2020 | 33.88 | 220.22 |
| 06/22/2020-06/28/2020 | 25.00 | 162.50 |
| 06/29/2020-07/05/2020 | 25.00 | 162.50 |
| 07/06/2020-07/12/2020 | 25.00 | 162.50 |
| 07/13/2020-07/19/2020 | 25.00 | 162.50 |
| 07/20/2020-07/26/2020 | 25.00 | 162.50 |
| 07/27/2020-08/02/2020 | 25.00 | 162.50 |
| 08/03/2020-08/09/2020 | 19.00 | 123.50 |
| 08/10/2020-08/16/2020 | 19.00 | 123.50 |
| 08/17/2020-08/23/2020 | 20.25 | 131.63 |
| 08/24/2020-08/30/2020 | 20.25 | 131.63 |
| 08/31/2020-09/06/2020 | Sick | |
| 09/07/2020-09/13/2020 | Sick | |
| 09/14/2020-09/20/2020 | Sick | |
| 09/21/2020-09/27/2020 | Sick | |
| 09/28/2020-10/04/2020 | 17.5 | 113.75 |
| 10/05/2020-10/11/2020 | 17.5 | 113.75 |

| 10/12/2020-10/18/2020 | 23.38 | 151.97 |
|---|---|---|
| 10/19/2020-10/25/2020 | 23.38 | 151.97 |
| 10/26/2020-11/1/2020 | 31.38 | 203.97 |
| 11/2/2020-11/8/2020 | 31.38 | 203.97 |
| 11/9/2020-11/15/2020 | 24.00 | 156.00 |
| 11/16/2020-11/22/2020 | 24.00 | 156.00 |
| 11/23/2020-11/29/2020 | 25.00 | 162.50 |
| 11/30/2020-12/06/2020 | 25.00 | 162.50 |
| 12/07/2020-12/13/2020 | 33.50 | 217.75 |
| 12/14/2020-12/20/2020 | 33.50 | 217.75 |
| 12/21/2020-12/27/2020 | 32.13 | 208.85 |
| 12/28/2020-01/03/2021 | 32.13 | 208.85 |
| 01/04/2021-01/10/2021 | 29.13 | 189.35 |
| 01/11/2021-01/17/2021 | 29.13 | 189.35 |
| 01/18/2021-01/24/2021 | 18.75 | 121.88 |
| 01/25/2021-01/31/2021 | 18.75 | 121.88 |
| 02/01/2021-02/07/2021 | 21.00 | 136.50 |
| 02/08/2021-02/14/2021 | 21.00 | 136.50 |
| **TOTAL** | **863.80** | **$5,614.74** |

50. Defendants' wage-hour violations were willful and intentional.

51. Defendants' were previously sued for wage-hour violations in federal court.

52. Upon belief, Defendants did not obtain legal or any other professional advice that they did not have to comply with the minimum wage and overtime wage requirements based on the hours work and pay received by Ms. Dilsiz.

53. Ms. Dilsiz had accrued at least 80 hours of earned and accrued sick leave.

54. Defendants failed to pay Ms. Dilsiz any of her accrued and earned sick leave pay.

55. Defendants failed to inform Ms. Dilsiz that she was entitled to sick leave pay.

56. There is no bona fide dispute that Ms. Dilsiz is owed the earned and accrued sick leave pay.

## VENUE & JURISDICTION

57. Venue is appropriate because the unlawful acts occurred in this District.

58. Jurisdiction is proper based on the federal questions presented in this case.

59. This Court has personal jurisdiction over both Defendants in this case.

## VIOLATIONS OF LAW

### COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT

60. Ms. Dilsiz re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

61. During the relevant time period set forth in this Complaint, Ms. Dilsiz regularly worked and works more than forty hours per week.

62. Ms. Dilsiz was not exempt from being paid the federal minimum wage, or overtime wages, at a rate of one and one-half times her regular rate of pay for hours worked over 40 in a workweek during the time period set forth in this Complaint.

63. In violation of the FLSA, Defendants did not pay Ms. Dilsiz statutorily mandated minimum and overtime wages for all the work she performed during the relevant period set forth in this Complaint.

64. The violations by Defendants were willful, intentional, and reckless.

### COUNT 2: VIOLATION OF THE MARYLAND WAGE & HOUR LAW

65. Ms. Dilsiz re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

66. During the relevant period set forth in this Complaint, Ms. Dilsiz not exempt from being paid the Maryland minimum wage, or overtime wages at a rate of one and one-half times her regular rate of pay for hours worked over 40 in a workweek.

67. In violation of the MWHL, Defendants did not pay Ms. Dilsiz the statutorily mandated minimum wage and overtime wages for her work, during the time period set forth in this Complaint.

68.  There was no bona fide dispute that Plaintiff was owed the owed overtime and minimum wage under the MWHL.

## COUNT 3: VIOLATION OF THE MONTGOMERY COUNTY MINIMUM WAGE LAW

69.  Ms. Dilsiz re-alleges and incorporates by reference each and every allegation set forth inthe preceding paragraphs.

70.  Ms. Dilsiz was not exempt from being paid the Montgomery County minimum wage.

71.  In violation of the MCMWL, Defendants did not pay Plaintiff the statutorily mandated minimum wage in Montgomery County, Maryland during the time period set forth in this Complaint.

## COUNT 4: VIOLATION OF THE MARYLAND WAGE PAYMENT & COLLECTION LAW

72. Ms. Dilsiz re-alleges and incorporates by reference each and every allegation set faith in the preceding paragraphs.

73. In violation of the MWPCL, Defendants did not pay Ms. Dilsiz the statutorily mandated minimum wage and overtime wages for her work for Defendants.

74. In violation of the MWPCL, Defendants failed to provide and pay Ms. Dilsiz with the 80 hours of sick leave pay as required under the Sick Leave Law.

75. The sick leave is an owing benefit that falls with the scope of the MWPCL. Section 3-501(c).

76. Months have passed since Ms. Dilsiz was owed payment from the Defendant for the wages and benefits as owing under this Complaint.

77. The wages and Defendants not paid or provided to Ms. Dilsiz were not withheld as the result of a bona fide dispute.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mine Dilsiz demands judgment against the Defendants, jointly and severally, for a sum that will properly, adequately, and completely compensate her for the nature, extent, and duration of her damages, and the costs of this action, and further requests that the Court enter judgment and:

A. award Plaintiff her minimum wages and overtime wages, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. §§ 207 and 216;

B. award Plaintiff her unpaid minimum wages and overtime, plus an equal amount in liquidated damages, pursuant to Md. Code., Labor & Empl. §3-427;

C. enter judgment in the amount of all wages due, as provided by the Maryland Wage Payment and Collection Law, Md. Code, Labor & Empl. § 3-507.2;

D. enter judgment in the amount of three times the amount of wages due as provided by Md. Code, Labor & Employment Article § 3-507.2;

E. award Plaintiff her unpaid minimum wages as provided by Montgomery County Code § 27-68;

F. award Plaintiff all of her costs and attorneys' fees incurred in this action, as provided for by 29 U.S.C. § 216(b), Md. Code. Labor & Empl. § 3- 427(a)(3) and§ 3-507.2(b);

G. award to Plaintiff liquidated damages, as provided by 29 U.S.C. § 216(b) and Md. Code, Labor & Empl. Art. § 3-428(b);

H. award Plaintiff pay equivalent to 80 hours of work ($13 x 80 = $1040) for the earned and accrued sick leave benefits for owing to Plaintiff under the MWPCL and Montgomery County's Sick Leave Law and three times that amount ($1040 x 3 = $3,120);

I. award prejudgment and post-judgement interest on the owed wages and benefits;and

J. award such other and further relief as the Court deems just and proper.

Respectfully submitted,

Stephen B. Lebau (Bar # 07258)

Devan M. Wang (Bar #30211)

LEBAU & NEUWORTH, LLC
606 Baltimore Avenue – Suite 201
Towson, Maryland 21204
sl@joblaws.net
dw@joblaws.net
tel. 443.273.1203
fax. 410.296.8660
*Attorneys for Plaintiff*

## REQUEST FOR JURY TRIAL

Plaintiff requests that a jury of his peers hear and decide this case.

Stephen B. Lebau (Bar # 07258)